**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY VINEYARDS,<br><br>        Plaintiff,<br><br>        v.<br><br>UPL NA INC., ARYSTA LIFESCIENCE NORTH AMERICA, LLC, BRANDT CONSOLIDATED INC., NUTRIEN AG SOLUTIONS, INC.,<br><br>        Defendants. | Case No. 1:20-cv-00506-JLT-CDB<br><br>ORDER DENYING AS MOOT DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT<br><br>(Docs. 60, 61, 61-1) |

Anthony Vineyards alleges that acres of its grapes were damages after it appylied the biological miticide, Biomite, shortly before rain fell over the area. Arysta Lifescience North America, LLC, UPL NA, Inc., and Brandt Consolidated, Inc. have filed joint Motions for Summary Judgment and a Request for Judicial Notice). (Docs. 60, 61, 61-1). For the reasons set forth below, the Court **DENIES** Brandt's Request for Judicial Notice, and **DENIES** the Motions for Summary Judgment. (Docs. 60, 61.)

///

///

///

///

# I. UNDISPUTED MATERIAL FACTS[1]

In late April and early May 2019, Plaintiff applied products, including Entrust, Serenade, Yellow Jacket Wettable Sulfur II, Nu-Film P, and Pro Gibb to its Timpson and Scarlet Royal grapes. (SSUMF, Doc. 60-2 at ¶ 1.) On May 18, 2019, Plaintiff then applied the biological miticide, Biomite, to 40 acres of its Timpson grapes, and 60 acres of its Scarlet Royal grapes, at a rate of 75.52 ounces in 300 gallons of water per acre. (*Id.* at ¶¶ 2–3.) The U.S. Environmental Protection Agency approved the Biomite miticide. (*Id.* at ¶ 14.) Brandt is a nationwide distributor of Biomite. (SSUMF, Doc. 61-3 at ¶ 18.) Biomite's label states:

> BIOMITE has been evaluated for phytotoxicity on a wide range of crops and ornamentals. However, since testing on all varieties of crops and ornamentals is not feasible, test a small portion of the area to be treated for phytotoxicity before treating the entire area. Further, all possible combinations or sequences of pesticide sprays, including fertilizers, surfactants, adjuvants and other pesticides, have not been tested, thus testing for phytotoxicity of spray mixtures is recommended.

(*Id.* at ¶ 15 (capitalizations in original).) Additionally, the Biomite label also states:

> This material conforms to the description on the label and is reasonably fit for the purposes referred to in the directions for use. Timing, unfavorable temperatures, weather conditions, presence of other materials, method of application, weather, watering practices, nature of soil, disease problems, condition of the crop, incompatibility with other chemicals, pre-existing conditions and other conditions influencing the use of this product are beyond the control of the seller. To the extent consistent with applicable law, buyer assumes all risks associated with the use, storage and handling of this material not in strict accordance with the directions given. TO THE EXTENT CONSISTENT WITH APPLICABLE LAW, NO OTHER EXPRESS OR IMPLIED WARRANTY OF FITNESS OR MERCHANTABILITY IS MADE.

(*Id.* at ¶ 17 (capitalizations in original).)

Overnight and into the morning of May 19, 2019, approximately 0.55 inches of rain fell in the area. (*Id.* at ¶ 4.) During the week after applying Biomite, Plaintiff discovered scarring on

---

[1] The defendants filed their Joint Separate Statement of Undisputed Facts ("SSUMF") as required by the Local Rules. (Doc. 60-2 at 2–4; Doc. 61-3 at 2–4); E.D. Cal. L.R. 260(a), (c). Because the SSUMFs attached to each motion are essentially identical, the Court will cite only to one. Also, though both sets of Defendants cite to "Undisputed Statement[s] of Additional Facts," (Doc. 60-3 at 2; Doc. 61-2 at 2), it appears from Plaintiff's Oppositions that such additional facts are actually in dispute. (*See* Doc. 66-1 at 1–3; Doc. 67-3 at 1–3.) The Court will address such facts below if necessary. Finally, though Plaintiff's Oppositions have attached its own set of SSUMFs, (Doc. 66-2 at 1–3; 67-2 at 1–4), a review of Defendants' Reply briefs demonstrates that such facts are almost all "[u]ndisputed, but immaterial," or alternatively, are "[d]isputed, but immaterial[.]" (*See* Doc. 69-1 at 2–8; 70-1 at 1–7.) As such, the Court will address these facts further below if necessary.

2

the Timpson and Scarlet Royal Grapes to which it had applied Biomite.  (*Id.* at ¶ 5.)  Plaintiff retained expert Gary Osteen to investigate the cause of possible scarring to its grapes, (*id.* at ¶ 6), and on November 12, 2019, he drafted a report of his investigation, stating that "fruit surface residues from previous applications of products other than Biomite may have played a roll [sic] in causing the scarring symptoms," and that "the rain event may have also transferred it onto sensitive berry tissue."  (*Id.* at ¶ 8 (cleaned up) (internal ellipses omitted) (internal quotation marks omitted).)  Further, Osteen's November 2019 report stated that "additional research should evaluate applications of Biomite to table grapes in cool wet weather patterns and at lower application volumes."  (*Id.* at ¶ 9.)  Plaintiff did not test its grapes to determine "what, if any, organic substances remained on its affected grapes at the time it discovered scarring," even though it could have conducted such testing, and Osteen similarly conducted no testing on Plaintiff's grapes.  (*Id.* at ¶¶ 10–12.)

## I. PROCEDURAL HISTORY

Plaintiff filed its First Amended Complaint against Arysta, the alleged distributor of Biomite, UPL, the alleged "successor in interest to Arysta," and Brandt, the corporation that "sold Biomite to Plaintiff[.]" (Doc. 29 at ¶¶ 3–5.)[2]  Plaintiff brings two causes of action for strict products liability and negligent failure to warn.  (*Id.* at 3–5.)

## II. LEGAL STANDARD

A. <u>Rule 56</u>

Summary judgment is appropriate under Rule 56 when the moving party demonstrates the absence of a genuine dispute as to any material fact and entitlement to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Idaho Conservation League v. Poe*, 86 F.4th 1243, 1246 (9th Cir. 2023).  "A fact is 'material' only if it might affect the outcome of the case[.]" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Jelinek v. Am. Nat'l Prop. and Cas. Co.*, 747 F. App'x 513, 514 (9th Cir. 2018); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he substantive law will identify which facts are material.

---

[2] Plaintiff voluntarily dismissed Defendants Natural Plant Protection and Jenco Enterprises, Inc., pursuant to Rule 41(a).  (Docs. 30, 55.)

3

Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgments."). Factual disputes that are irrelevant or unnecessary will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. On the other hand, "[a]n issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Airlines for Am. v. City and Cnty. of S.F.*, 78 F.4th 1146, 1152 (9th Cir. 2023) (internal quotation marks and citation omitted); *Fresno Motors*, 771 F.3d at 1125.

"To prevail at summary judgment, the defendant-movant must demonstrate that, even viewing the evidence in the light most favorable to the plaintiff, the plaintiff cannot satisfy its burden to prove its claims." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021) (internal quotation marks and citation omitted); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. United States*, 854 F.3d 594, 599 (9th Cir. 2017) (citation omitted). The movant may satisfy its initial burden by either showing that the nonmoving party "does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial," *G and G Closed Circuit Events, LLC v. Liu*, 45 F.4th 1113, 1115 (9th Cir. 2022) (internal quotation marks and citation omitted), or alternatively, by "producing affirmative evidence negating an essential element of the nonmoving party's claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000). If the movant satisfies its burden, the burden then shifts to the non-moving party to "designate specific facts demonstrating the existence of genuine issues for trial." *Oracle Corp.*, 627 F.3d at 387 (citation omitted). The Court will not "scour the record in search of a genuine issue of triable fact. [The Court] rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted); *Perez v. City of Fresno*, 591 F. Supp. 3d 725, 737 (E.D. Cal. 2022) ("The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact.").

### III. DISCUSSION

#### A. Request for Judicial Notice (Doc. 61-1)

Brandt has requested judicial notice under Federal Rule of Evidence 201 of "the pleadings within this Case . . . and other documents and facts and events mentioned below," attached as exhibits to its motion. (Doc. 61-1 at 1.) Though labeled as a judicial notice request, this was improper. The Court will review such exhibits and pleadings to the extent they are necessary to evaluate whether there are genuine disputes of fact at issue. Indeed, as the movant, Defendant was required to attach such exhibits to its motion, making this RJN duplicative. Fed. R. Civ. P. 56(a). Accordingly, Brandt's RJN, (Doc. 61-1), is **DENIED AS MOOT**.

#### B. Causation Experts

Defendants move for summary judgment on the basis that Plaintiff cannot prove the "substantial factor" causation element of its failure-to-warn strict products liability theory. (Doc. 60-1 at 13–17; Doc. 61-4 at 14–18 (arguing general and specific causation)); *see also Himes v. Somatics, LLC*, 16 Cal. 5th 209, 222 (2024) ("Whether asserting a negligent or a strict liability failure-to-warn claim, the plaintiff must [ ] establish that the manufacturer's [or distributor's] failure to warn was a substantial factor in causing the plaintiff's injury.") (cleaned up) (internal quotation marks, brackets, and citations omitted); *Camacho v. JLG Indus. Inc.*, 93 Cal. App. 5th 809, 817 (2023). Defendants contend that Plaintiff lacks causation evidence because the proffered testimonies of experts Gary Osteen and John Kovacevich are unreliable. (Doc. 60-1 at 15–17; Doc. 61-4 at 15–18.) Defendants assert that the experts' opinions are "sheer speculation," "not based on sufficient facts or data," and lack "any scientific methodology." (Doc. 60-1 at 15–17; Doc. 61-4 at 15–18 (same arguments).) Upon review of all arguments set forth in Defendants' instant motions, the Court concludes that Defendants have merely repeated the same arguments set forth in their initial motions to exclude these experts' testimonies. (*See* Docs. 39, 40.) The Court denied those motions and need not repeat its analysis once more. (Doc. 90.) Accordingly, Defendants' motions for summary judgment, (Docs. 60, 61), are **DENIED AS MOOT** on these grounds.

#### C. FIFRA Preemption

5

1    Defendants maintain that the Federal Insecticide, Fungicide, and Rodenticide Act, 7
2 U.S.C. § 136 *et seq.* ("FIFRA") preempts both of Plaintiff's failure-to-warn claims, and as such,
3 should be dismissed.  (Doc. 60-1 at 17–19; Doc. 61-4 at 11–13.)  Specifically, Defendants
4 represent that "FIFRA contains an express preemption clause," which prohibits states from
5 adding or changing the "labeling or packaging" of certain pesticides.  (Doc. 60-1 at 18 (citing 7
6 U.S.C. § 136v(b)); Doc. 61-4 at 12 (same).)  Thus, Defendants argue that common law failure-to-
7 warn claims "must fail because they would necessarily require additional or different warnings
8 from those required by FIFRA."  (Doc. 60-1 at 18; Doc. 61-4 at 12–13.)³  Plaintiff responds, in
9 part, that it is not seeking "information that is different or in addition to what FIFRA requires."
10 (Doc. 66 at 11.)

11    "Under FIFRA, the United States Environmental Protection Agency ('EPA') enforces the
12 use, sale, and labeling of pesticides."  *Hardeman v. Monsanto Co.*, 997 F.3d 941, 950 (9th Cir.
13 2021) (cleaned up) (quoting *Bates v. Dow Agroscis. LLC*, 544 U.S. 431, 437 (2005)).  FIRA
14 prescribes that a pesticide is "misbranded" if its label contains a statement that is "false or
15 misleading in any particular, including a false or misleading statement concerning the efficacy of
16 the pesticide," or if "its label does not contain adequate instructions for use, or its label omits
17 necessary warnings or cautionary statements."  *Bates*, 544 U.S. at 438 (internal quotation marks
18 omitted) (quoting, in part, 7 U.S.C. §§ 136(q)(1)(F), (G)).  "Because it is unlawful under the
19 statute to sell a pesticide that is registered but nevertheless misbranded, manufacturers have a
20 continuing obligation to adhere to FIFRA's labeling requirements."  *Id.* (citing, in part,
21 § 136j(a)(1)(E)).

22    Additionally, Section 136v of FIFRA provides, in pertinent part, that states "shall not
23 impose or continue in effect any requirements for labeling or packaging *in addition to or different*
24 *from* those required under this subchapter."  7 U.S.C. § 136v(b) (emphasis added); *Bates*, 544
25 U.S. at 439.  It is important to clarify, however, that "[t]he prohibitions in § 136v(b) apply only to

---

³ Plaintiff's response also points to Biomite's label from Chile, labels from other products that contain proper warnings, and Title 40 C.F.R. § 156.10(i)(2)(x), which requires labelling to provide for "limitations or restrictions on use required to prevent unreasonable adverse effects."  (Doc. 66 at 10–11.)  Because the Court determines that FIFRA does not preempt Plaintiff's claims in the first instance, the Court need not review such extrinsic evidence and regulations.

6

'requirements.' An occurrence that merely motivates an optional decision does not qualify as a requirement." *Bates*, 544 U.S. at 443. For instance, as the Supreme Court has explained, a jury verdict may "induce a pesticide manufacturer to change its label," however, this is not a "requirement." *Id.* Instead, a "requirement is a rule of law that must be obeyed; an event, such as a jury verdict, that merely motivates an optional decision is not a requirement." *Id.* at 445. Taken together, for FIFRA to preempt a state rule, the state law must satisfy two conditions: "First, it must be a requirement '*for labeling or packaging*'; rules governing the design of a product, for example are not pre-empted. Second, it must impose a labeling or packaging requirement that is '*in addition to or different from* those required under this subchapter.'" *Bates*, 544 U.S. at 444 (emphases in original). As such, "a state-law labeling requirement is not pre-empted by §136v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions." *Id.* at 447.

In *Hardeman*, the Ninth Circuit addressed FIFRA in the context of California's failure-to-warn products liability theory. *See* 997 F.3d at 954–58. The Court held that "FIFRA's requirement that a pesticide not be misbranded is consistent with, if not broader than, California's common law duty to warn." *Id.* at 954, 955 ("FIFRA . . . is broader than California's requirement under negligence (no warning needed if unreasonable to do so)[] and is, at minimum, consistent with California's requirement under strict liability (no warning needed if risk not known or knowable).") (internal footnote omitted) (citing 7 U.S.C. § 136q(1)(G)). In other words, the Court concluded that "[b]ecause FIFRA's misbranding requirements parallel those of California's common law duty, [the plaintiff's] failure-to-warn claims effectively enforce FIFRA's requirement against misbranding and are thus not expressly preempted." *Id.* at 955 (citations omitted).

Accordingly, the Court denies Defendants' motions for two reasons. First, Defendants suggest that Plaintiff's allegations imply "[f]or Plaintiff to prevail, the Court must determine that an <u>additional</u> warning was required on the EPA-approved Biomite label." (Doc. 60-1 at 19 (underlining in original).) In other words, Defendants believe that the "net effect, if the Plaintiff prevails, is that Defendants would be required to include a warning <u>in addition to</u> those already required by FIFRA." (*Id.* (underlining in original).) However, Plaintiff's FAC clearly

demonstrates that it only seeks monetary damages, and it does not request Defendants take any action or make any modifications to its label. (Doc. 29 at 5–6.) Indeed, a failure-to-warn claim does not require the defendant to take any action pertaining to its label; instead, it simply asks whether "the failure to warn was a substantial factor in causing the [plaintiff's] injury." *Himes*, 16 Cal. 5th at 225 (citation omitted). In assessing whether Defendants will add additional or different warnings, the Court cannot rely on "speculation as to whether a jury verdict will prompt the manufacturer to take any particular action (a question, in any event, that will depend on a variety of cost/benefit calculations best left to the manufacturer's accountants)." *Bates*, 544 U.S. at 445 (parenthetical in original).

Second, though "the threat of a damages remedy [may] give [Defendants] cause to comply, [if] the requirements imposed on them under state and federal law do not differ," there is no preemption issue. *Bates*, 544 U.S. at 448. The Ninth Circuit has explicitly held that FIFRA does not preempt such failure-to-warn claims. *Hardeman*, 997 F.3d at 954–958 (affirming district court's "conclusion that [plaintiff's] state failure-to-warn claims are 'equivalent to' and 'fully consistent with' FIFRA and therefore not expressly preempted). Defendants' motions, (Docs. 60, 61), are therefore **DENIED** for these reasons.[4]

D. Cal. Food & Agric. Code § 12855

Defendants request summary judgment based on their claim that they are exempt from liability under California Food and Agricultural Code § 12855. This section provides that a,

> [R]egistrant is not liable for any injury or damage that is suffered solely by reason of any of the following:
> (a) The use of the pesticide for a purpose that is not indicated by the label.
> (b) **The use of the pesticide contrary to the printed directions of the registrant or seller**.
> (c) The breach of any warranty by the registrant that is not expressly printed on the label.

Cal. Food & Agric. Code §§ 12855(a)–(c) (emphasis added). Thus, Defendants contend that because Plaintiff "applied Biomite in a manner directly contrary to the directions on the label,"

---

[4] The Court declines to review Plaintiff's proffered evidence in its Opposition of Biomite's Chilean label, as well as the labels of other products, and similarly, declines to address Defendants' objections to this evidence in their Reply, as all such evidence is immaterial to the instant preemption issue. (Doc. 66 at 9–10; Doc. 69 at 11.)

8

*i.e.*, they did not test a small portion of the area to be treated for phytotoxicity before treating the entire area with Biomite. (Doc. 60-1 at 20; Doc. 61-4 at 13–14.)

The Court finds that Section 12855 constitutes an affirmative defense, such that Defendants bear the burden of proof. (*See* Doc. 88 at 15 n.11; *Baker v. Nutrien Ag Sols., Inc.*, No. 1:21-cv-01490-DAD-SKO, 2022 WL 3142065, at *12 (E.D. Cal. Aug. 5, 2022)). As the California Court of Appeals acknowledged in *John Norton Farms, Inc. v. Todagco*, Section 12855 is a basis for conferring "statutory immunity" on pesticide registrants. 124 Cal. App. 3d 149, 169 (1981). "Under California law, statutory immunities are generally affirmative defenses" for which "Defendants bear the burden of proof at summary judgment[.]" *Cervantes v. San Diego Police Chief Shelley Zimmerman*, Lead Case No. 17-cv-01230-BAS-AHG, 2020 WL 5759752, at *20 (S.D. Cal. Sept. 28, 2020) (citation omitted); *see also* 2 Martin D. Carr and Ann Taylor Schwing, California Affirmative Defenses § 38:22 (2d ed. 2024) (labeling Section 12855 as an affirmative defense and basis for statutory immunity).

Defendants have failed to demonstrate that Section 12855 applies here. As recited above, Section 12855 applies only to a "registrant," which is defined as "a person that has registered a pesticide and has obtained a certificate of registration from the department." Cal. Food & Agric. Code § 12755. "Every manufacturer of, importer of, or dealer in any pesticide, . . . shall obtain a certificate of registration from the department before the pesticide is offered for sale." *Id.* § 12811. Excluded from the definition of a "registrant" is any "dealer or agent that sells any pesticide that has been registered by the manufacturer or wholesaler[.]" Cal. Food & Agric. Code § 12811. Plaintiff has pleaded that Arysta as a distributor of Biomite, and UPL as Arysta's successor-in-interest. (Doc. 29 at ¶¶ 3–4, 16.) In their motion, Arysta and UPL agree that they are distributors. (Doc. 60-1 at 6 ("Defendants are the United States distributors for Biomite").) It is undisputed that Brandt is a nationwide distributor of Biomite. (SSUMF, Doc. 61-3 at ¶ 18.) Defendants have submitted no evidence demonstrating that Arysta, UPL, or Brandt registered Biomite with the Department of Pesticide Regulation.[5] Accordingly, Defendants have failed to

---

[5] Cal. Food & Agric. Code § 12752.2 ("Department means the Department of Pesticide Regulation when used in . . . Chapter 2 (commencing with Section 12751)"); *see also id.* § 12755 (a "registrant" is a person who registered a pesticide and has obtained a certificate of registration from the "department.").

1  satisfy their burden in demonstrating that Section 12855 applies in the first instance.

2  Even still, the Court disagrees with Defendants' view of Section 12855 for two additional
3  reasons. In its Opposition, Plaintiff states that "it is undisputed that in July[] 2018, Anthony
4  Vineyards did a test application to two rows before applying Biomite."[6] (Doc. 66 at 11 (citation
5  omitted).) Indeed, the parties agree that Plaintiff ran such a trial run in July 2018 on two rows of
6  unspecified types of grapes. (*See* Ex. A, John Kovacevich Dep., Doc. 60-4 at 22:14–23:4
7  (testifying that he applied Biomite on a "trial basis" to two rows of grapes in July 2018 on an
8  unspecified variety of blocks of grapes), *id.* at 23:24–24:3 (stating he performed no other testing
9  of Biomite on the grapes prior to applying Biomite in May 2019); Ex. D, Kovacevich Dep., Doc.
10  60-4 at 7:11–23 (stating he could not recall what variety of grapes he applied Biomite to in July
11  2018, but "[a]s far as we can remember," it was not applied to either Timpson or Scarlet Royal
12  grapes).) Though the Biomite label requires the user to "test a small portion of the area to be
13  treated for phytotoxicity before treating the entire area," (Ex. A, Doc. 60-5 at 5), the label does
14  not specify the type of "area" to be tested, nor how long "before" such testing must occur. Thus,
15  even if Defendants are all "registrants" under Section 12855, the Court cannot conclude that
16  Plaintiff applied Biomite contrary to the label's instructions—that decision would be left to the
17  trier of fact. Cal. Food & Agric. Code § 12855(b); *John Norton Farms*, 124 Cal. App. 3d at 169
18  ("[T]he question of whether plaintiff used the product called Tenoran 'outside the label' so as to
19  make applicable the statutory immunity provided by section 12855 of the Food and Agricultural
20  Code would be a question of fact for the jury to decide, unless reasonable minds could not differ
21  as to the evidence on that question.").

22  Additionally, even if Plaintiff *did* misapply Biomite, it would be for the jury to decide if
23  "the injury or damage that is suffered [resulted] *solely* by reason" of this improper testing. Cal.
24  Food & Agric. Code § 12855 (emphasis added); *John Norton Farms*, 124 Cal. App. 3d at 174–75
25  (where plaintiff argued multiple causes for ruin of onion crops, including rain, failure to provide
26  adequate warnings, and an "inadequately worded label," the Court of Appeals held that "[i]t was

27
28  [6] It is an undisputed fact that Plaintiff did not test Biomite on the Timpson or Scarlet Royal varieties of grapes. (see SSUMF, Doc. 60-2 at 4, ¶ 16) The import of this agreement as to the question at issue is unclear.

10

for the jury to determine (after hearing all of the evidence presented during the trial) whether the plaintiff proved any of its theories of liability with a preponderance of the evidence."); *Baker*, 2022 WL 3142065, at *12 (stating whether plaintiff's damages were "solely" as a result of her "failure to heed the label's warnings" was a factual determination "better suited for analysis and resolution on summary judgment or at trial"). For all these reasons, Defendants' Motions for Summary Judgment, (Docs. 60, 61) are **DENIED**.

### IV.  CONCLUSION AND ORDER

For the foregoing reasons, it is **ORDERED** that:

(1) Defendant Brandt Consolidated, Inc.'s Request for Judicial Notice, (Doc. 61-1) is **DENIED AS MOOT**.

(2) Defendants' Motions for Summary Judgment, (Docs. 60, 61), are both **DENIED**.

IT IS SO ORDERED.

Dated:   **November 25, 2024**

UNITED STATES DISTRICT JUDGE